SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
J. BARRETT MARUM, Cal. Bar No. 228628
LISA S. YUN, Cal. Bar No. 280812
379 Lytton Avenue
Palo Alto, California 94301-1479
Telephone:  650.815-2600
Facsimile:  650.815.2601
E mail  bmarum@sheppardmullin.com
    lyun@sheppardmullin.com

Attorneys for Plaintiff
MERKLE, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### (SAN JOSE DIVISION)

| | |
|---|---|
| MERKLE, INC., a Maryland corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>HEALTH IQ INSURANCE SERVICES, INC., a New York corporation,<br><br>    Defendants. | Case No. 5:18-cv-6998<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT FOR FAILURE TO PAY OUTSTANDING FEES AND COSTS**<br><br>**(2) UNJUST ENRICHMENT**<br><br>**(3) SPECIFIC PERFORMANCE TO COMPLY WITH DATA DESTRUCTION AND RETURN REQUIREMENTS**<br><br>**(4) IN THE ALTERNATIVE, BREACH OF CONTRACT FOR FAILURE TO COMPLY WITH DATA DESTRUCTION AND RETURN REQUIREMENTS**<br><br>**DEMAND FOR JURY TRIAL** |

      Plaintiff Merkle, Inc. ("Merkle" or "Plaintiff") alleges the following facts and claims against Defendant Health IQ Insurance Services, Inc. ("Health IQ" or "Defendant").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the Plaintiff, which is a citizen of Maryland, and Defendant, which is a citizen of New York and California. In addition, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. The United States District Court for the Northern District of California (San Jose Division) is the proper venue for this action because Defendant is headquartered in Mountain View, California.

## THE PARTIES

3. Plaintiff Merkle, Inc. is a Maryland corporation with its principal office located in Columbia, Maryland.

4. Defendant Health IQ Insurance Services, Inc. is a New York corporation with its principal office located at Mountain View, California.

## GENERAL ALLEGATIONS

5. Merkle incorporates by reference the preceding allegations of this Complaint.

6. On or around February 1, 2018, Merkle and Health IQ entered into a Master Services Agreement ("MSA") pursuant to which Merkle agreed to provide marketing services to Health IQ in exchange for payment. A true and correct copy of the MSA and Addendum No. 1 is attached as **Exhibit A**, and is incorporated here by reference.

7. The Parties also entered into a related Statement of Work ("SOW") dated March 1, 2018. A true and correct copy of the SOW is attached as **Exhibit B**, and is incorporated here by reference. The MSA and SOW shall collectively be referred to as the "Agreements"). Merkle commenced its work for HealthIQ shortly after the parties executed the Agreements.

8. Merkle performed under the Agreements until early August of 2018. On August 11, 2018, Health IQ sent Merkle a purported "notice of termination" of the

SOW. A true and correct copy of the letter is attached as **Exhibit C**, and is incorporated here by reference.

9. In the notice, Health IQ claimed Merkle breached the SOW by failing to provide services it promised to provide. Health IQ further claimed that it was relieved of its obligation to pay for Merkle's monthly retainer and creative costs.

10. Health IQ's purported notice of termination, however, was defective as it failed to provide the notice and opportunity to cure required by the MSA. Moreover, none of the alleged breaches identified by Health IQ in the notice were actually breaches. Merkle did not breach the Agreements.

11. At the time Health IQ sent Merkle the termination notice discussed above, Merkle had invoiced Health IQ $1,683,404.00, which remained unpaid. Per Paragraph 3.2 of the MSA, "Invoices will be deemed to be correct and acceptable to [Health IQ] unless [Health IQ] advises Merkle in writing (each, a "Dispute Notice") of the disputed items on the Invoice (a "Disputed Amount") within sixty (60) calendar days following [Health IQ]'s receipt of the applicable invoice." Further, "[u]nless otherwise agreed to in the applicable Statement of Work, any invoice or portion of an invoice with respect to which Merkle has not received a Dispute Notice ("Undisputed Amount"), shall be paid by [Health IQ] to Merkle within thirty (30) calendar days following the date of such invoice." Until Health IQ sent the termination notice discussed above, Health IQ provided no Dispute Notices pursuant to the Agreements. True and correct copies of all invoices Merkle provided to Health IQ are attached collectively as **Exhibit D**, and are incorporated here by reference.

12. On September 11, 2018, Merkle's counsel sent Health IQ a demand letter and remaining invoices for the balance of the amounts Health IQ owes to Merkle. A true and correct copy of the letter is attached hereto as **Exhibit E**, and is incorporated here by reference.

13. In the demand letter, Merkle's counsel informed Health IQ that it had no defense to payment of the amounts due under the Agreements.

14.     In particular, per the Agreements, Merkle agreed to provide marketing services to Health IQ in exchange for payment. Merkle made no guarantee of any results under the Agreements and, with only minor exceptions, the Agreements were not deliverables-based. Instead, the Agreements provided that Merkle would furnish Health IQ with certain services and obligated Health IQ to pay for them. Indeed, paragraph 3.1(e) of the SOW specifically states that "[t]he scope of services in this SOW is not deliverables-based, so even though Merkle may provide deliverables to [Health IQ], payments or SOW completion will not be subject to any solution or deliverable acceptance."

15.     There are no terms in the Agreements that guarantee response rates to the marketing program implemented by Merkle.

16.     Notably, when Health IQ attempted to include a performance guarantee in the Agreements when they were being negotiated, Merkle refused.

17.     In addition, the MSA contains an integration clause in paragraph 10.13, and therefore any statements that preceded its execution are of no relevance.

18.     Merkle significantly overdelivered on its obligations under the SOW by providing new creatives, three major modifications, and six moderate modifications.

19.     However, to date, Health IQ has not made any payments on the outstanding fees and expenses in the amount of $2,487,010.19.

20.     Further, the Agreements also require Health IQ to cease use of Merkle's data and provide a written certification to Merkle that it has ceased use of, returned, and/or destroyed all of Merkle's data ("Data Certification").

21.     In particular, Section 4(1) of the SOW requires Health IQ to (a) cease all use of DataSource Data; (b) remove from its files, computers and systems, all copies of DataSource Data; and (c) return DataSource Data to Merkle (or Licensee, if so requested by Merkle) and/or destroy all copies of DataSource Data, providing written certification of such to Merkle.

22. Section 3.6.5 of Addendum No. 1 to the MSA states, "Upon termination of the Agreement or applicable SOW covering the Data or Data Services: . . . the Other Party shall (i) immediately discontinue all use of that Party's Data; (ii) delete all that Party's Data from its files and computer systems, and return to that Party all copies, partial copies and any documentation or materials evidencing that Party's Data, and (iii) certify to that Party in writing that the foregoing has been completed."

23. In the letter dated September 11, 2018, attached hereto as Exhibit E, Merkle's counsel requested Health IQ to complete and return a Data Certification, entitled "Certification of Return and/or Destruction of Merkle DataSource Data."

24. However, to date, Health IQ has failed to complete and return the Data Certification.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

## FOR FAILURE TO PAY OUTSTANDING FEES AND COSTS

25. Merkle incorporates by reference the preceding allegations of this Complaint.

26. Merkle and Health IQ entered into the Agreements pursuant to which Merkle agreed to provide marketing services to Health IQ in exchange for payment.

27. Merkle performed all of its obligations under the Agreements. In fact, Merkle significantly overdelivered on its obligations under these sections by providing three new creatives, three major modifications and moderate modifications. Nevertheless, Merkle only billed Health IQ the agreed-upon price for this work despite substantially overperforming.

28. Health IQ breached the Agreements by failing to pay Merkle $2,487,010.19 in outstanding fees and expenses through September 10, 2018.

29. Merkle has suffered damages as a result of Health IQ's breach and is entitled to damages in the amount of $2,487,010.19, plus interest.

-5-
SMRH:488202840.4                                                                                      COMPLAINT

## SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

30. Merkle incorporates by reference the preceding allegations of this Complaint.

31. Merkle has provided the marketing services it agreed to provide per the Agreements and also incurred direct out-of-pocket costs and expenses. Moreover, Merkle significantly overdelivered on its obligations under the SOW.

32. Health IQ benefitted from those services at Merkle's expense. However, Health IQ refuses to pay Merkle for those services.

33. Equity and good conscience require restitution in the amount of $2,487,010.19, plus interest.

## THIRD CAUSE OF ACTION

## SPECIFIC PERFORMANCE

## TO COMPLY WITH DATA DESTRUCTION AND RETURN REQUIREMENTS

34. Merkle incorporates by reference the preceding allegations of this Complaint.

35. Merkle and Health IQ entered into the SOW and MSA.

36. Merkle has fully performed all of its contractual obligations under the Agreements to date, and is ready, willing and able to perform any outstanding obligations, if any.

37. However, Health IQ has failed to certify that it has (a) ceased all use of DataSource Data; (b) removed from its files, computers and systems, all copies of DataSource Data; and (c) returned DataSource Data to Merkle (or Licensee, if so requested by Merkle) and/or destroyed all copies of DataSource Data, providing written certification of such to Merkle. It is within Health IQ's power to do so.

38. Even if costs could be calculated with any reasonable certainty, there is no adequate remedy at law because the data at issue includes proprietary information regarding Merkle's technology and other confidential information that needs to be secured.

39.     Thus, Merkle is entitled to a judgment requiring Health IQ to specifically perform its obligations under the Agreements.

### FOURTH CAUSE OF ACTION
### (IN THE ALTERNATIVE)
### BREACH OF CONTRACT
### FOR FAILURE TO COMPLY WITH DATA DESTRUCTION AND RETURN REQUIREMENTS

40.     Merkle incorporates by reference the preceding allegations of this Complaint.

41.     Merkle and Health IQ entered into the SOW and MSA.

42.     Merkle performed all of its obligations under both Agreements.

43.     However, Health IQ breached Section (4) of the SOW and Section 3.6.5 of Addendum No. 1 to the MSA by failing to provide a Data Certification to Merkle, confirming that it complied with Merkle's data destruction and/or return requirements.

44.     Merkle has suffered damages as a result of Health IQ's breach and is entitled to damages in an amount to be proven at trial.

### JURY DEMAND

Merkle demands a jury trial.

### PRAYER

WHEREFORE, Merkle prays for judgment as follows:

1.      For damages in the amount of $2,487,010.19, plus interest;

2.      For specific performance requiring immediate compliance with Section 4(1) of the SOW and Section 3.6.5 of Addendum No. 1 to the MSA and delivery of written certification of compliance to Merkle;

3.      For fees, costs and expenses incurred (including, without limitation, attorneys' fees, costs and expenses incurred) in an amount to be proven at trial; and

3. For any other relief the Court deems appropriate.

Dated: November 19, 2018

                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                         By         */s/ J. Barrett Marum*
                                    J. BARRETT MARUM
                                      LISA S. YUN

                                  Attorneys for Plaintiff
                                     MERKLE, INC.